UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| LAURA HUGHES | : |
|     Plaintiff | : |
| | :   CIVIL ACTION NO. |
| | :   3:21 CV 00882 (VAB) |
| v. | : |
| AUSTIN RICE | :   SEPTEMBER 3, 2021 |
|     Defendant | : |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**I.     INTRODUCTION**

The defendant, Austin Rice, through counsel, has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and D. Conn. Local Rule 7.  The defendant submits this memorandum of law in support of the motion to dismiss.

The present matter arises from an automobile accident that occurred on March 13, 2021.  The plaintiff, Laura Hughes, alleges she was a passenger in a motor vehicle being operated by Rice on Route 2, near Exit 12 in Marlborough, Connecticut.  Complaint, at ¶ 5.  Hughes asserts that Rice negligently operated and lost control of the vehicle, causing it to crash and her to sustain serious bodily injuries.  Complaint, at ¶¶ 6-7.

Hughes purports to predicate jurisdiction on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and preemptively attempts to avoid the glaring problem with establishing complete diversity by relegating certain allegations concerning Rice's domicile to a footnote. Complaint, at ¶ 3 (footnote 1). It is undisputed that Hughes is a resident and domiciliary of Avon, Connecticut. Complaint, at ¶1. Hughes contends that Rice is a resident of Fort Pierce, Florida, and that such place is his domicile. Complaint, at ¶ 2, and n.1. As more fully explained below, Rice's domicile was and has been in Connecticut and he never established a new domicile in Florida when he visited his grandmother in May 2021. Consequently, the Court lacks subject matter jurisdiction over the matter due to the absence of complete diversity of citizenship, and, therefore, this case should be dismissed.

## II.     STATEMENT OF FACTS

The Plaintiff, Laura Hughes, is the mother of the Defendant, Austin Rice. Affidavit of Austin Rice, at ¶ 2 (attached as Exhibit A) ["Rice Affidavit"]. Hughes and Rice moved to Connecticut when Rice was in the Eighth Grade. Rice Affidavit, at ¶ 3. Rice attended schools in South Windsor and Colchester, Connecticut, and he graduated from Bacon Academy in Colchester in 2005. Rice Affidavit, at ¶ 3. About five years later, Rice and his brother, Tyler, moved from the family home and lived with each other in apartments in Marlborough and Andover. Rice Affidavit, at ¶ 5.

Due to drug addiction following a serious motor vehicle accident, Rice had a difficult time maintaining a consistent residence as an adult. Rice Affidavit, at ¶¶ 4-6. From 2013 through 2015, Rice lived with friends in Connecticut when he could, but stayed in local shelters and on the streets when he could not. Rice Affidavit, at ¶ 6 ("I have had a difficult adult life wherein I have been homeless, meaning I had to sleep wherever I could find shelter whether it was in parks, under bridges, on streets, with friends or relatives, etc.").

Rice moved down to Florida on a temporary basis to work for his father, but returned to Connecticut in 2018 when that work dried up. Rice Affidavit, at ¶ 7. Upon his return to Connecticut, Rice again lived with friends when he could and in shelters or on the streets when he couldn't find a place to stay with friends/acquaintances. Rice Affidavit, at ¶ 7. He also attended several in-patient rehabilitation programs in Connecticut, including the Institute of Living in Hartford, the Renaissance House in Waterbury, and Stonehaven in Portland for substance abuse and mental health concerns. Rice Affidavit, at ¶ 7.

Hughes' mother and Rice's grandmother (Leslie Hughes) requested Rice's help around her Florida home in early 2019. Rice Affidavit, at ¶ 8. Unfortunately, while temporarily living at his grandmother's house, he was involved in another serious accident in April 2019 that resulted in a broken femur and a considerable recovery

period (that also entailed Rice having unexplained seizures).  Rice Affidavit, at ¶ 8.

Rice then spent part of 2019 and 2020 helping the Plaintiff fix up and renovate her

Palm Beach, Florida residence, before they both returned to Connecticut in late 2020.

Rice Affidavit, at ¶¶ 9-11.

In October 2020, Rice permanently moved back to Connecticut to live with

Hughes in Avon, Connecticut, since she was essentially his caretaker due to his

physical limitations and seizures.  Rice Affidavit, at ¶ 11.  He needed help due to the

unexplained seizures and the impact it was having on his ability to function in life.  Rice

Affidavit, at ¶ 11.  Hughes would help arrange and drive Rice wherever he needed to go

for medical appointments, food and clothes.  Rice Affidavit, at ¶ 11.  They had made

plans that Hughes would help to get his Connecticut driver's license, but that never

happened due to COVID-19 pandemic and because it really was not a priority given his

seizure status.  Rice Affidavit, at ¶ 11.  Indeed, Rice did not drive at all when he

returned to Connecticut in October 2020 until the date of the accident in March 2021.

Rice Affidavit, at ¶ 11.

Rice considers Connecticut his home base and he intends to stay in Connecticut

indefinitely.  Rice Affidavit, at ¶ 12.  He always returned to Connecticut because it is

where he grew up and where his family and friends live.  Rice Affidavit, at ¶ 12.  When

he moved in with Hughes in October 2020, they both fully intended it to be a permanent

move to Connecticut for him.  Rice Affidavit, at ¶ 12.  Indeed, he lived in Connecticut for the majority of his life with the exception of a few temporary stays in Florida when he needed a job or when his grandmother needed him.  Rice Affidavit, at ¶ 12.

On March 13, 2021, the day of the subject accident, Rice was living at home with Hughes at property she owned at 10 Pine Trail in Avon, Connecticut, as he had been for more than the previous six months.  Rice Affidavit, at ¶ 13.  After the accident, he continued to live at home in Avon while Hughes treated for her injuries from the accident.  Rice Affidavit, at ¶ 14.  Two months later, on May 5, 2021, Rice went to Florida to help his elderly grandmother as she asked for help caring for her property.  Hughes knew that this visit was intended by Rice to be a temporary stay in Florida because she helped Rice arrange and schedule extensive medical procedures in Connecticut for the week of August 20-27, 2021 and additional follow up treatments.  Rice Affidavit, at ¶ 14.  The procedure called for extensive in-patient monitoring and testing for a week long stay at Yale New Haven Hospital.  Rice Affidavit, at ¶ 14.

In July 2021, prior to Rice's return to Connecticut, he was served with lawsuit papers in Florida after being told by Hughes and other family members that he would not be sued by his mother.  Rice Affidavit, at ¶ 15.  Rice did not feel welcome to return to live with his mother under the circumstances and had to find alternate living arrangements in Connecticut (which is very difficult given his medical condition and

limited means), but he continues to use the Avon address as his residence address for mailing purposes. Rice Affidavit, at ¶¶ 15, 17. In August 2021, he returned home to Connecticut and underwent the extensive in-patient treatment in Connecticut from August 20-27, 2021. Rice Affidavit, at ¶ 15. He has many well-established relationships with his doctors in Connecticut and has many appointments in Connecticut over the next few months. Rice Affidavit, at ¶ 16. Rice remains in Connecticut, living in a hotel and searching for a more stable place to stay in Connecticut, as his intentions were, are, and have always been to live and remain in Connecticut. Rice Affidavit, at ¶ 18.

### III. DISCUSSION

A. <u>The Court Lacks Subject Matter Jurisdiction Due to the Lack of Diversity Jurisdiction.</u>

The Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction due to the lack of complete diversity of citizenship.

Subject-matter jurisdiction may be challenged at any time and if it is lacking the case must be dismissed or remanded by the court. See Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

Plaintiff claims federal court jurisdiction on complete diversity of the parties. "Diversity jurisdiction under 28 U.S.C. § 1332 is proper 'only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." OneWest Bank, N.A. v. Melina, 827 F.3d 214, 217-18 (2d Cir. 2016). Diversity is measured as of the time the action is commenced. Id.; see also Wright v. Musanti, 887 F.3d 577, 584 (2d Cir. 2018) (diversity of citizenship is determined at time action is commenced in cases where diversity is sole basis for court's jurisdiction); Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998) (federal court does not have jurisdiction if diversity did not exist at time action was filed). Plaintiff bears the burden of establishing that diversity jurisdiction existed at the time the action was commenced. Linardos, supra, 157 F.3d at 947. For purposes of diversity jurisdiction, citizenship is based upon domicile. Id. at 948. "Domicile is the place where a person has his true and fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." Id. Because a person can

have multiple residences, but only one domicile, "allegations of residency alone cannot establish citizenship." Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 102-03 (2d Cir. 1997); Dyer v. Robinson, 853 F. Supp. 169, 172 (D. Md. 1994) ("[A]lthough a person may have more than one residence, he may only have one 'domicile' for purposes of determining subject matter jurisdiction"). Residency refers to a person living in a particular place at a given time but, unlike domicile, does not require an intent to remain or return. United States v. Venturella, 391 F.3d 120, 125 (2d Cir. 2004).

The Supreme Court has articulated a two-part test for determining a party's domicile: "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." Texas v. Florida, 306 U.S. 398, 424 (1939). Thus, residency alone is insufficient to establish domicile. Van Buskirk v. United Grp. of Companies, Inc., 935 F.3d 49, 54 (2d Cir. 2019); Ming Li v. Colonial BT, LLC, No. 3:14-cv-999 (CSH), 2014 WL 3579469, at *5 (D. Conn. July 21, 2014) ("Citizenship, which is generally synonymous with domicile, may not be inferred from residency."); Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co., 224 F.3d 139, 141 (2d Cir. 2000) (domicile generally requires physical presence in a state with intention to remain there indefinitely).

Austin Rice contends that he has always been domiciled in Connecticut despite the periods of time where he has resided or lived out of state for various reasons. At

the very least, when he returned to Connecticut in October 2020, he firmly established his domicile in Avon, Connecticut, and did not create a new domicile during his temporary stay in Florida from May 5, 2021 until July 12, 2021, when he was served with the summons in this matter.  Hughes, who knew of Rice's intentions to stay in Connecticut, simply timed the service of the summons to Rice's visit so that he could be served in Florida in an effort to support a claim for diversity jurisdiction in federal court.

Rice's Affidavit provides more than ample evidence of his domicile in Connecticut at the time of service.  This case does not present the typical analysis of factors[1] regarding domicile because Rice does not work, does not own vehicles or any substantial assets, has not voted since at least 2016, does not pay property taxes, and has very limited possessions aside from necessities of living.  However, even during the periods of time when he was homeless, he was living in Connecticut.  Rice Affidavit, at

---

[1] In determining domicile "[f]actors frequently taken into account include current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes." Bank of India v. Subramanian, No. 06 Civ. 2026 (WHP), 2007 WL 1424668, at *3, 2007 U.S. Dist. LEXIS 35148, at *3 (S.D.N.Y. May 15, 2007). Courts also consider "whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) ... and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." Nat'l Artists Mgmt. Co., Inc. v. Weaving, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

¶¶ 6-7.  At least since October 2020, Rice had established himself as a resident and domiciliary of Avon, Connecticut, where he lived with his mother after she purchased the Avon property.  Rice Affidavit, at ¶ 11.  Rice moved his limited belongings to her home and relied upon Hughes as his caretaker for help with life and medical appointments.  Rice Affidavit, at ¶ 11.  He needed help due to the unexplained seizures and the impact it was having on his ability to function in life.  Rice Affidavit, at ¶ 11.  Hughes would drive Rice wherever he needed to go for medical appointments and bring him to food banks.  Rice Affidavit, at ¶ 11.

Hughes and Rice also made plans that Hughes would help to get Rice food stamps and other assistance as well as a Connecticut driver's license (but due to COVID-19 pandemic, his limited means, and seizure/medical status, it was not an immediate priority).  Rice Affidavit, at ¶ 11.  On May 5, 2021, Rice went to visit his elderly grandmother in Florida to help her.  Both Hughes and Rice knew that the Florida trip was intended as a temporary visit as Hughes had attended prior medical appointments with Rice and was fully aware that he had to return to Connecticut for the in-patient medical procedure the week of August 20-27, 2021, and intended to continue to be under the care of the Connecticut doctors for additional follow up treatments and care indefinitely.  Rice Affidavit, at ¶ 14.  Hughes knew that Rice's primary care doctors, neurologists, counselors and every other treating provider are in Connecticut because

she helped arrange and bring him to these medical appointments.

Unmistakably, Rice considers Connecticut his home base and he intends to stay in Connecticut indefinitely. Rice Affidavit, at ¶ 12. He has a demonstrated pattern of always returning to Connecticut because it is where he grew up and where his family and friends live. Rice Affidavit, at ¶ 12. Connecticut is and has been Rice's domicile since moving to Connecticut in the Eighth Grade. Most importantly, on July 12, 2021, he was a Connecticut domiciliary.

Plaintiff cannot unilaterally change defendant's domicile through mere allegations in a Complaint, nor can she do so by making him feel unwelcome in their home when she sued him after telling him she wouldn't do so. The presumption is that Rice's domicile remains in Connecticut until a new domicile is established:

> "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." Van Buskirk, supra, 935 F.3d at 53; Gutierrez v. Fox, 141 F.3d 425, 427 (2d Cir. 1998). "To effect a change in domicile, two elements are required: (1) residence in a new domicile; and (2) the intention to remain there indefinitely." Ceglia v. Zuckerberg, 772 F. Supp. 2d 453, 455–56 (W.D.N.Y. 2011) (citing Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000)). A party alleging that there has been a change in domicile bears the burden of proving the required intent to change from one domicile to another coupled with residence in a new State and must prove those facts by clear and convincing evidence. Palazzo, 232 F.3d at 42.

Borderud v. Riverside Motorcars, LLC, No. 3:18-CV-1291 (VAB), 2020 WL 2494760, at *4 (D. Conn. May 13, 2020). Thus, Hughes has the burden to establish through "clear

and convincing evidence" that Rice intended to change his domicile from Connecticut to Florida when he visited his grandmother in May 2021.

That burden becomes well nigh impossible to meet when it is clear that the intent of both Hughes and Rice was to have him stay in Connecticut indefinitely. Their actions speak louder than any allegations in the Complaint or in either parties' affidavits. Hughes welcomed Rice into her new Avon property and provided invaluable care for Rice, giving him the home that he so desperately needed. Moreover, Rice and Hughes made plans for Rice to treat with Connecticut providers for all of his medical treatment for the foreseeable future. While Hughes was recovering Rice agreed to go to Florida to help his grandmother. He had no idea that he would not be welcomed back when he left. Unmistakably, he did not have an intent to live in Florida indefinitely—he had definitive plans to return to Connecticut. The only reason that he did not go back home sooner was Hughes' filing of the lawsuit which made him feel unwelcome to return to her property (as he had been advised by her that she would not be suing him for the subject accident). There is no evidence that Rice intended this brief detour was intended to be a permanent (or even an indefinite) move but there is ample evidence that it was intended to be a visit of limited duration. See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 224 F.3d 139, 141 (2d Cir. 2000) ("Of course, a person may still be domiciled in a state even if a non-resident, so long as he or she has his

home there and intends to return"). Rice had made his home in Connecticut and intended to return.

Simply stated, Rice was domiciled in Connecticut at the time of the service of the lawsuit summons and he did not intend to change that domicile to Florida by virtue of providing assistance to his grandmother via the limited duration visit. He did not pack up his limited belongings and move them down to Florida when he left. He did not stay in Florida after helping his grandmother. He returned home to Connecticut.

## IV.   CONCLUSION

The defendant is and was a Connecticut domiciliary at the time of the service of process in this case. The effort of the plaintiff to take advantage of a limited duration trip to Florida by serving the defendant while he was helping with the plaintiff's mother is troubling and illusory. But, the defendant's trip and the service does not alter the defendant's domicile. Since both plaintiff and defendant are Connecticut domiciliaries, complete diversity of citizenship is lacking. Consequently, the Court lacks subject matter jurisdiction over this case and the matter should be dismissed.

DEFENDANT, AUSTIN RICE

By   /s/
  Keith R. Rudzik, Esq.
  Federal Bar No. ct 24007
  Howard, Kohn, Sprague & FitzGerald
  237 Buckingham Street
  Hartford, CT 06106
  (860) 525-3101 (Telephone)
  (860) 247-4201 (Fax)

## **CERTIFICATION**

      This is to certify that on September 3, 2021, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept the electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
     Keith R. Rudzik